| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michael M. Wintringer, Esq., SBN: 150637<br>Solomon, Grindle, Silverman & Wintringer, APC<br>12651 High Bluff Drive, Suite 250<br>San Diego, CA 92130<br>Tel: (858) 793-8500<br>Fax: (858) 793-8263<br>mike@sgswlaw.com<br><br>☐ Individual appearing without attorney<br>☒ Attorney for: Pacific Western Bank | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

| In re: WILFRED JESUS DIAZ and SAMANTHA LYNN SILVA DIAZ, Debtors; JASON M. RUND, Chapter 7 Trustee, | CASE NO.: 2:15-bk-10687-RK<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** |
| Debtor(s). | DATE: MARCH 10, 2015<br>TIME: 10:30 A.M.<br>COURTROOM: 1675 |

**Movant:** PACIFIC WESTERN BANK as successor-by-merger to FIRST CALIFORNIA BANK, its successors and/or assigns.

1. **Hearing Location:**

   ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties) , their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 1                         F 4001-1.RFS.PP.MOTION
F4001MPP

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  [X] This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7.  [ ] This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____ ; and, you may appear at the hearing.

    a.  [ ] An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  [ ] An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  [ ] An application for order setting hearing on shortened notice and remains pending.  After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: _2/17/15_

Solomon, Grindle, Silverman & Wintringer, APC
Printed name of law firm (if applicable)

Michael M. Wintringer, Esq.
Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 2                          F 4001-1.RFS.PP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

    a. ☐ Vehicle (*year, manufacturer, type, and model*):

    Vehicle Identification Number:
    Location of vehicle (if known):

    b. ☐ Equipment (*manufacturer, type, and characteristics*):

    *Serial number(s):*

    *Location (if known):*

    c. ☒ Other Personal Property (*type, identifying information, and location*):

    See itemized list attached to Debtor's Schedule B (Exhibit "H" hereto) that outlines all inventory for closed
    business called ITABO dba It's a Grind that Movant has a Security Agreement and perfected UCC1.

3. **Bankruptcy Case History:**

    a. ☒ A voluntary bankruptcy petition ☐ An involuntary bankruptcy petition
    under chapter ☒ 7 ☐ 11 ☐ 12 ☐ 13 was filed on (*date*) <u>1/16/2015</u>.

    b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____.

    c. ☐ Plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

    (1) ☒ Movant's interest in the Property is not adequately protected.

        (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

        (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant
        sufficient to protect Movant's interest against that decline.

        (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's
        obligation to insure the collateral under the terms of Movant's contract with Debtor.

        (D) ☐ Other (*see attached continuation page*).

    (2) ☐ The bankruptcy case was filed in bad faith.

        (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case
        commencement documents.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☐ Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐ *(Chapter 12 or 13 cases only)* All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation ☐ postpetition postconfirmation.

(4) ☐ The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐ The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐ Movant regained possession of the Property on *(date)* _____ , which is ☐ prepetition ☐ postpetition.

(7) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

c. ☐ Other *(specify)*:

6. ☒ **Evidence in Support of Motion:** *(Declaration(s) must be signed under penalty of perjury and attached to this motion)*

a. The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) "H" _____ .

d. ☐ Other:

7. **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under: [X] 11 U.S.C. § 362(d)(1)  [X] 11 U.S.C. § 362(d)(2)

2. [X] Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3. [ ] Confirmation that there is no stay in effect.

4. [ ] The stay is annulled retroactive to the petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. [X] The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. [X] The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. [ ] The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8. [ ] The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9. [ ] The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. [ ] The order is binding and effective in any future bankruptcy case, no matter who the debtor may be
   [ ] without further notice, or  [ ] upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. [ ] If relief from stay is not granted, the court orders adequate protection.

12. [ ] See continuation page for other relief requested

Date: 2/17/15

Solomon, Grindle, Silverman & Wintringer, APC
Print name of law firm

Michael M. Wintringer, Esq.
Print name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PERSONAL PROPERTY DECLARATION

I, (*name of declarant*) Humberto Espada_____ , declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the Property (*specify*):

    a.  [ ]    I am the Movant.

    b.  [X]    I am employed by Movant as (*title and capacity*):   A senior Vice President and Managing Director for Pacific Western Bank ("Movant").

    c.  [ ]    Other (*specify*):


2.  a.  [X]    I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b.  [ ]    Other (see attached):


3.  The Property is:

    a.  [ ]    Vehicle (*year, manufacturer, type, model and year*):

         *Vehicle Identification Number*:
         *Location of vehicle (if known)*:


    b.  [ ]    Equipment (*manufacturer, type, and characteristics*):

         *Serial number(s)*:
         *Location (if known)*:


    c.  [X]    Other personal property (*type, identifying information, and location*):   See itemized list attached to Debtor's Schedule B (Exhibit "H" hereto) that outlines all inventory for closed business called ITABO dba It's a Grind that Movant has a Security Agreement and perfected UCC1.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 6                                    **F 4001-1.RFS.PP.MOTION**

4.  The nature of Debtor's interest in the Property is:

  a. ☐  Sole owner
  b. ☒  Co-owner (*specify*):  Lazara Idalis Diaz
  c. ☐  Lessee
  d. ☐  Other (*specify*):
  e. ☒  Debtor ☒ did  ☐ did not  list the Property in the schedules filed in this case.

5.  ☐  The lease matured or was rejected on (*date*) _____:

  a. ☐  rejected
    (1) ☐  by operation of law.
    (2) ☐  by order of the court.
  b. ☐  matured.

6.  Movant has a perfected security interest in the Property.

  a. ☒  A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit "A", "B", "C" & "D" attached hereto.

  b. ☐  The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law.  True and correct copies of the following items are attached to this motion:
    (1) ☐  Certificate of title ("pink slip") (Exhibit _____).
    (2) ☐  Vehicle or other lease agreement (Exhibit _____).
    (3) ☐  Security agreement (Exhibit _____).
    (4) ☐  Other evidence of a security interest (Exhibit _____).

  c. ☒  The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law.  True and correct copies of the following items are attached to this motion:
    (1) ☒  Security agreement (Exhibit "E"_____).
    (2) ☒  UCC-1 financing statement (Exhibit "F"_____).
    (3) ☐  UCC financing statement search results (Exhibit _____).
    (4) ☐  Recorded or filed leases (Exhibit _____).
    (5) ☒  Other evidence of perfection of a security interest (Exhibit "G"_____). Agreement of Merger.

  d. ☐  The Property is consumer goods.  True and correct copies of the following items are attached to this motion:
    (1) ☐  Credit application (Exhibit _____).
    (2) ☐  Purchase agreement (Exhibit _____).
    (3) ☐  Account statement showing payments made and balance due (Exhibit _____).
    (4) ☐  Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

  e. ☐  Other liens against the Property are attached as Exhibit _____.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                             Page 7                                  F 4001-1.RFS.PP.MOTION

7. Status of Movant's debt:

   a.  The amount of the monthly payment: $ <u>tiered payment plan per 1st amended</u> loan; currently it is $2,700.00.

   b.  Number of payments that became due and were not tendered:  [ x ] prepetition   [   ] postpetition.

   c.  Total amount in arrears: $ <u>25,500.00</u> .    Date of Default is February 1, 2014. six (6) payments at $2,000.00 & five (5) payments at $2,700.00 from 2/2/14 to 1/16/15 (date of bankruptcy filing).

   d.  Last payment received on (*date*): _____ .

   e.  Future payments due by the anticipated hearing date (*if applicable*): _____
An additional payment of $ <u>2,700.00</u> will come due on (*date*) <u>3/1/15</u> , and on the <u>1st</u> day of each month thereafter. If the payment is not received by the <u>10th</u> day of the month, a late charge of $ <u>135.00 - 5% of pymt</u> will be charged under the terms of the loan.

8. [   ] Attached as Exhibit <u>N/A</u> is a true and correct copy of a POSTPETITION payment history that accurately reflects the dates and amounts of all payments made by the Debtor since the petition date.

9. Amount of Movant's debt:

   a.  Principal:.............................................................................$ <u>276,130.41</u>
   b.  Accrued interest:.................................................................$ <u>16,181.99</u>
   c.  Costs (attorney's fees, late charges, other costs):...............$ <u>10,323.78</u>
   d.  Advances (property taxes, insurance): ................................$ _____
   e.  TOTAL CLAIM as of <u>1/16/2015</u> :........................................$ <u>302,636.18</u>

10. [ x ] (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $ <u>18,091.00</u> .
This valuation is based upon the following supporting evidence:     See Schedule B, Exhibit "H" hereto

   a. [   ]  This is the value stated for property of this year, make, model, and general features in the reference guide most commonly used source for valuation data used by Movant in the ordinary course of its business for determining the value of this type of property. True and correct copies of the relevant excerpts of the most recent edition of the reference guide are attached as Exhibit _____ .

   b. [   ]  This is the value determined by an appraisal or other expert evaluation. True and correct copies of the expert's report and/or declaration are attached as Exhibit _____ .

   c. [ x ]  The Debtor's admissions in the Debtor's schedules filed in the case. True and correct copies of the relevant portions of the Debtor's schedules are attached as Exhibit <u>"H"</u> .

   d. [   ]  Other basis for valuation (*specify*):

> **NOTE:** If valuation is contested, supplemental declarations providing additional foundation for the opinions of value should be submitted.

11. Calculation of equity in Property:

   a. [ x ] **11 U.S.C. § 362(d)(1) - Equity Cushion:**

       I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ <u>Zero</u> and is _____ % of the fair market value of the Property.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ ___Zero_____

12. ☐ The fair market value of the Property is declining because:


13. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____ .

14. ☐ Movant regained possession of the Property on (*date*) _____ , which is: ☐ prepetition ☐ postpetition.

15. ☐ (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) _____
The plan was confirmed on (*if applicable*) (*date*) _____

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postconfirmation payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:          $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:          $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:          $ [          ]

TOTAL POSTPETITION DELINQUENCY:          $

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (specify):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property:

(1) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

(2) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

(3) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 10                    **F 4001-1.RFS.PP.MOTION**

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit_____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2-12-15 | Humberto Espada | |
|---------|-----------------|--|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
12651 High Bluff Drive, Suite 250, San Diego, California  92130.

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) February 12, 2015 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

## SEE ATTACHED SERVICE LIST.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

February 12, 2015 _____ Meg Minnick _____      _(signature)_____
*Date*                              *Printed Name*                               *Signature*

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## SERVICE INFORMATION

**Via U.S. 1st Class Mail**


**DEBTORS**:
Wilfred Diaz
4443 Levelside Avenue
Lakeside, CA  90712

Samantha Lynn Silva Diaz
4443 Levelside Avenue
Lakeside, CA  90712

**NON-FILING CO-DEBTOR:**
Lazara Idalis Diaz
3364 Live Oak Street
Huntington Park, CA  90255

**DEBTORS' ATTORNEY:**
Giovanni Orantes, Esq.
Orantes Law Firm PC
3435 Wilshire Blvd., Suite 2920
Los Angeles, CA  90010

**CHAPTER 7 TRUSTEE:**
Jason M. Rund (TR)
Sheridan & Rund
840 Apollo Street, Suite 351
El Segundo, CA  90245

**U.S. TRUSTEE:**
United States Trustee (LA)
915 Wilshire Blvd., Suite 1850
Los Angeles, CA  90017

**JUDGE'S COPY:**
Honorable Judge Robert N. Kwan
U.S. Bankruptcy Court,
Central District of California
255 E. Temple Street
Los Angeles, CA  90012-3300
(Chambers Copy)

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT"A"

U S Small Business Administration

# NOTE

# 19946

| | |
|---|---|
| SBA Loan # | ████-6000 |
| SBA Loan Name | It's a Grind Coffee House |
| Date | April 17 2008 |
| Loan Amount | 310,000 00 |
| Interest Rate | Wall Street Journal Prime + 2 50% |
| Borrower | Itabo Partnership |
| Operating Company | N/A |
| Lender | First California Bank |

## 1 PROMISE TO PAY

In return for the Loan, Borrower promises to pay to the order of Lender the amount of

Three Hundred Ten Thousand and no/100****************************************************** Dollars,

interest on the unpaid principal balance, and all other amounts required by this Note

## 2 DEFINITIONS

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note

"Guarantor" means each person or entity that signs a guarantee of payment of this Note

"Loan" means the loan evidenced by this Note

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who

pledges collateral

"SBA" means the Small Business Administration, an Agency of the United States of America

3   PAYMENT TERMS

Borrower must make all payments at the place Lender designates  The payment terms for this Note are

1  ☐Maturity   This Note will mature in 10 years and 6 months from date of initial disbursement
2  ☐The interest rate on this Note will fluctuate   The initial interest rate is 10 25% per year   This initial rate is the prime rate on the date SBA received the loan application, plus 2 50%   The initial interest rate must remain in effect until the first change period begins
Borrower must pay one payment of interest only on the disbursed principal balance one month from the month of initial disbursement on this Note, payment must be made on the first calendar day in the month it is due

Borrower must pay principal and interest payments of $4,139 71 every month, beginning one month from the month of initial disbursement on this Note, payments must be made on the first calendar day in the months they are due

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal

The interest rate will be adjusted every calendar quarter (the "change period")

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day
The adjusted interest rate will be 2 50% above the Prime Rate   Lender will adjust the interest rate on the first calendar day of each change period   The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note
If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default   If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase
Loan Prepayment
Notwithstanding any provision in this Note to the contrary
Borrower may prepay this Note   Borrower may prepay 20% or less of the unpaid principal balance at any time without notice   If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must
a  ☐Give Lender written notice,
b  ☐Pay all accrued interest, and
c  ☐If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b , above
If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice
All remaining principal and accrued interest is due and payable 10 years and 6 months from date of initial disbursement
Late Charge   If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5 00% of the unpaid portion of the regularly scheduled payment

3

4  DEFAULT

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company

A   Fails to do anything required by this Note and other Loan Documents,

B   Defaults on any other loan with Lender,

C   Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds,

D   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA,

E   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA,

F   Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note,

G   Fails to pay any taxes when due,

H   Becomes the subject of a proceeding under any bankruptcy or insolvency law,

I    Has a receiver or liquidator appointed for any part of their business or property,

J    Makes an assignment for the benefit of creditors,

K   Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note,

L   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent, or

M  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note

5  LENDER'S RIGHTS IF THERE IS A DEFAULT

Without notice or demand and without giving up any of its rights, Lender may

A   Require immediate payment of all amounts owing under this Note,

B   Collect all amounts owing from any Borrower or Guarantor,

C   File suit and obtain judgment,

D   Take possession of any Collateral, or

E   Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement

6  LENDER'S GENERAL POWERS

Without notice and without Borrower's consent, Lender may

A   Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses,

B   Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral  Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs  If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance,

C   Release anyone obligated to pay this Note,

D   Compromise, release, renew, extend or substitute any of the Collateral, and

E   Take any action necessary to protect the Collateral or collect amounts owing on this Note

4

7  WHEN FEDERAL LAW APPLIES

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations
Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing
liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local
control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law
to deny any obligation, defeat any claim of SBA, or preempt federal law

8  SUCCESSORS AND ASSIGNS

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors
and assigns

9  GENERAL PROVISIONS

A  All individuals and entities signing this Note are jointly and severally liable

B  Borrower waives all suretyship defenses

C  Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable
   Lender to acquire, perfect, or maintain Lender's liens on Collateral

D  Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender
   may delay or forgo enforcing any of its rights without giving up any of them

E  Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note

F  If any part of this Note is unenforceable, all other parts remain in effect

G  To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including
   presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim
   that Lender did not obtain any guarantee, did not obtain, perfect, or maintain a lien upon Collateral, impaired
   Collateral, or did not obtain the fair market value of Collateral at a sale

10  STATE-SPECIFIC PROVISIONS

"Borrower acknowledges this Note is secured by a Deed of Trust in favor of Lender on real property located in Los Angeles County, State of California   That Deed of Trust contains the following due-on-sale provision

DUE ON SALE - CONSENT BY LENDER   Lender may at Lender's option   declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer   without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property   A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property, whether legal, beneficial or equitable, whether voluntary or involuntary, whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater that three (3) years, lease-option contract, or by sale, assignment   or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of converyance of an interest in the Real Property   However   this option shall not be excercised by Lender if such exercise is prohibited by applicable law

11  BORROWER'S NAME(S) AND SIGNATURE(S)

By signing below, each individual or entity becomes obligated under this Note as Borrower

Itabo Partnership

_____        _____

_____        __4/22/08__
Lazara Diaz, General Partner

_____        __4/22/08__
Wilfred Diaz  General Partner

_____        _____

# EXHIBIT "B"

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $310,000.00 | 04-17-2008 | 11-01-2018 | [redacted]46 | 51 / 44 | | RD | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "***" has been omitted due to text length limitations

**Borrower** Itabo Partnership
247 Pine Avenue
Long Beach, CA 90802

**Lender** First California Bank
Irvine Office
Small Business Administration Division
19752 Mac Arthur Bouelvard
Irvine CA 92612

**THIS BUSINESS LOAN AGREEMENT** dated April 17, 2008, is made and executed between Itabo Partnership ("Borrower") and First California Bank ( Lender") on the following terms and conditions Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement Borrower understands and agrees that (A) in granting, renewing or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion, and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement

**TERM** This Agreement shall be effective as of April 17, 2008, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement

**CONDITIONS PRECEDENT TO EACH ADVANCE** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents

**Loan Documents** Borrower shall provide to Lender the following documents for the Loan (1) the Note, (2) Security Agreements granting to Lender security interests in the Collateral, (3) financing statements and all other documents perfecting Lender's Security Interests, (4) evidence of insurance as required below, (5) guaranties (6) together with all such Related Documents as Lender may require for the Loan, all in form and substance satisfactory to Lender and Lender's counsel

**Borrower s Authorization** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require

**Payment of Fees and Expenses** Borrower shall have paid to Lender all fees charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document

**Representations and Warranties** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct

**No Event of Default** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document

**REPRESENTATIONS AND WARRANTIES** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists

**Organization** Borrower is a partnership which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business Specifically Borrower is, and at all times shall be, duly qualified as a foreign partnership in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage Borrower maintains an office at 247 Pine Avenue, Long Beach, CA 90802 Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral Borrower will notify Lender prior to any change in the location of Borrower's principal office address or any change in Borrower's name Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower s business activities

**Assumed Business Names** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business

| Borrower | Assumed Business Name | Filing Location | Date |
|---|---|---|---|
| Itabo Partnership | It s A Grind Coffee House | Los Angeles County | 02-25-2008 |

**Authorization** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles or agreements of partnership, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties

**Financial Information** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender Borrower has no material contingent obligations except as disclosed in such financial statements

**Legal Effect** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms

**Properties** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements

**BUSINESS LOAN AGREEMENT**
(Continued)

Loan No 46

Page 2

relating to such properties All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years

**Hazardous Substances** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that (1) During the period of Borrower's ownership of the Collateral there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters (3) Neither Borrower nor any tenant, contractor agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral, and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise

**Litigation and Claims** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing

**Taxes** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided

**Lien Priority** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral

**Binding Effect** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms

**AFFIRMATIVE COVENANTS** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will

**Notices of Claims and Litigation** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor

**Financial Records** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times

**Financial Statements** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request

**Additional Information** Furnish such additional information and statements, as Lender may request from time to time

**Insurance** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require

**Insurance Reports** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following (1) the name of the insurer, (2) the risks insured, (3) the amount of the policy, (4) the properties insured, (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values, and (6) the expiration date of the policy In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral The cost of such appraisal shall be paid by Borrower

**Guaranties** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties

| Names of Guarantors | Amounts |
|---|---|
| Lazara Diaz | $310,000 00 |
| Wilfred Diaz | $310,000 00 |

**Other Agreements** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements

**Loan Proceeds** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing

10

**BUSINESS LOAN AGREEMENT**

Loan No ████46

(Continued)

Page 3

**Taxes, Charges and Liens** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments taxes governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits prior to the date on which penalties would attach, and all lawful claims that, if unpaid might become a lien or charge upon any of Borrower's properties, income, or profits Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP

**Performance** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender Borrower shall notify Lender immediately in writing of any default in connection with any agreement

**Operations** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel, provide written notice to Lender of any change in executive and management personnel, conduct its business affairs in a reasonable and prudent manner

**Environmental Studies** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower

**Compliance with Governmental Requirements** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest

**Inspection** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense

**Compliance Certificates** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement

**Environmental Compliance and Reports** Borrower shall comply in all respects with any and all Environmental Laws, not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities, shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources

**Additional Assurances** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests

**LENDER'S EXPENDITURES** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand, (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy, or (2) the remaining term of the Note, or (C) be treated as a balloon payment which will be due and payable at the Note's maturity

**NEGATIVE COVENANTS** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender

**Indebtedness and Liens** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender

**Continuity of Operations** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise

**Loans, Acquisitions and Guaranties** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business

**Agreements** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith

**CESSATION OF ADVANCES** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if (A) Borrower or any Guarantor is in

11

## BUSINESS LOAN AGREEMENT
(Continued)

default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender, (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt, (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan, or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender

**DEFAULT**   Each of the following shall constitute an Event of Default under this Agreement

**Payment Default**   Borrower fails to make any payment when due under the Loan

**Other Defaults**   Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower

**Environmental Default**   Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan

**Default in Favor of Third Parties**   Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents

**False Statements**   Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter

**Death or Insolvency**   The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower

**Defective Collateralization**   This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason

**Creditor or Forfeiture Proceedings**   Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender   However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute

**Events Affecting Guarantor**   Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness

**Events Affecting General Partner of Borrower**   Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent

**Change in Ownership**   The resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower

**Adverse Change**   A material adverse change occurs in Borrower's financial condition  or Lender believes the prospect of payment or performance of the Loan is impaired

**Right to Cure**   If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default  (1)  cure the default within fifteen (15) days, or (2)  if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical

**EFFECT OF AN EVENT OF DEFAULT**   If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and  at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional   In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise   Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently   Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies

**CHOICE OF VENUE**   Borrower and Lender agree that all actions or proceedings arising in connection with this Agreement and the other agreements, instruments and documents executed and/or delivered by Borrower and/or Lender in connection herewith shall be tried and litigated only in the State and Federal courts located in the county of Ventura, Los Angeles or Orange, State of California, as Lender may elect, provided, however, that any suit seeking enforcement against any collateral or other property may be brought, at Lender's option, in the courts of any jurisdiction where Lender elects to bring such action or where such collateral or other property may be found   Borrower and Lender waive, to the extent permitted under applicable law, any right each may have to assert the doctrine of forum non conveniens or to object to venue to the extent any proceeding is brought in accordance with this paragraph

**BORROWER'S FINANCIAL STATEMENTS**   Borrower shall maintain a system of accounting established and administered in accordance with sound business practices to permit preparation of the following financial statements in conformity with GAAP   Borrower covenants and agrees with Lender that while this Agreement is in effect, unless Lender shall otherwise give its prior written consent, Borrower shall provide to Lender the following financial statements, certified by Borrower as being true and correct

**Annual Statements**   As soon as available, but in no event later than one hundred twenty (120) days after the end of each fiscal year, Borrower shall deliver to Lender Borrower's financial statements, prepared by Borrower, including but not limited to a balance sheet, an income statement, a statement of cash flows, and appropriate footnotes and schedules   Such financial statements shall present fairly the financial condition of Borrower as at the dates indicated as well as the results of its operations and cash flows for the periods indicated in conformity

12

## ⃝ BUSINESS LOAN AGREEMENT ⃝
### (Continued)

with GAAP applied on a basis consistent with prior years

**MISCELLANEOUS PROVISIONS**  The following miscellaneous provisions are a part of this Agreement

**Amendments**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment

**Attorneys Fees, Expenses**  Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement  Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services  Borrower also shall pay all court costs and such additional fees as may be directed by the court

**Caption Headings**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement

**Consent to Loan Participation**  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender  Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests  Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests  Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan  Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender

**Governing Law**  This Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions  This Agreement has been accepted by Lender in the State of California

**No Waiver by Lender**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement  No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor s obligations as to any future transactions  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender

**Notices**  Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement  Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address  For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address  Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers

**Severability**  If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement

**Subsidiaries and Affiliates of Borrower**  To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates  Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates

**Successors and Assigns**  All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns  Borrower shall not, however  have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender

**Survival of Representations and Warranties**  Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents  Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur

**Time is of the Essence**  Time is of the essence in the performance of this Agreement

**DEFINITIONS**  The following capitalized words and terms shall have the following meanings when used in this Agreement  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code  Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement

**Advance**  The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement

13

**BUSINESS LOAN AGREEMENT**
(Continued)

**Agreement**   The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time

**Borrower**   The word "Borrower" means Itabo Partnership and includes all co-signers and co makers signing the Note and all their successors and assigns

**Collateral**   The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise

**Environmental Laws**   The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U S C Section 9601, et seq ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub L No 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U S C Section 1801, et seq , the Resource Conservation and Recovery Act 42 U S C Section 6901, et seq , Chapters 6 5 through 7 7 of Division 20 of the California Health and Safety Code, Section 25100, et seq , or other applicable state or federal laws, rules, or regulations adopted pursuant thereto

**Event of Default**   The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement

**GAAP**   The word "GAAP" means generally accepted accounting principles

**Grantor**   The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest

**Guarantor**   The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan

**Guaranty**   The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note

**Hazardous Substances**   The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of generated, manufactured, transported or otherwise handled   The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws   The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos

**Indebtedness**   The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents

**Lender**   The word "Lender" means First California Bank, its successors and assigns

**Loan**   The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time

**Note**   The word Note ' means any Note, including but not limited to, the U S Small Business Administration Note, dated April 17 2008, in the original principal amount of $310,000 00 from Borrower to Lender, together with all renewals of, extension of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement and any all future promissory notes thereafter

**Permitted Liens**   The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender, (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith, (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent, (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens", (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing, and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets

**Related Documents**   The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan

**Security Agreement**   The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law contract or otherwise, evidencing governing, representing, or creating a Security Interest

**Security Interest**   The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise

14

## BUSINESS LOAN AGREEMENT
### (Continued)

-Loan No ██46

Page 7

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS  THIS BUSINESS LOAN AGREEMENT IS DATED APRIL 17  2008

**BORROWER**

ITABO PARTNERSHIP

By _____
    Lazara Diaz  General Partner of Itabo Partnership

By _____
   Wilfred Diaz  General Partner of Itabo Partnership

**LENDER**

FIRST CALIFORNIA BANK

By _____
   Authorized Signer

LASER PRO Lending  Ver  5 40 00.003  Copr  Harland Financial Solutions Inc  1997  2008  All Rights Reserved   CA  F ICFIWINCFNLPLIC40 FC  TR 4171  PR 6

15

# LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement") is made    April 17, 2008    between the Borrower

and Lender identified in the attached Authorization issued by the U S  Small Business Administration ("SBA") to

Lender, dated    October 24, 2007    , SBA Loan Number    [redacted]-6000    ("Authorization")

SBA has authorized a guaranty of a loan from Lender to Borrower for the amount and under the terms
stated in the attached Authorization  (the "Loan")

In consideration of the promises in this Agreement and for other good and valuable consideration,
Borrower and Lender agree as follows

1  Subject to the terms and conditions of the Authorization and SBA's Participating Lender Rules as
   defined in the Guarantee Agreement between Lender and SBA, Lender agrees to make the Loan if
   Borrower complies with the following "Borrower Requirements"  Borrower must

   a  Provide Lender with all certifications, documents or other information Lender is required by the
      Authorization to obtain from Borrower or any third party,

   b  Execute a note and any other documents required by Lender, and

   c  Do everything necessary for Lender to comply with the terms and conditions of the Authorization

2  The terms and conditions of this Agreement

   a  Are binding on Borrower and Lender and their successors and assigns,

   and

   b  Will remain in effect after the closing of the Loan

3  Failure to abide by any of the Borrower Requirements will constitute an event of default under the
   note and other loan documents

Borrower

Itabo Partnership

By _____    _____    Date  4/22/08
     Lazara Diaz, General Partner    Wilfred Diaz, General Partner

Lender    First California Bank

By _____  RVP for    Date  4/22/08
     Ron DeNapoli  Vice President

Wolters Kluwer Financial Services  St  Cloud  MN

16

# EXHIBIT "C"



U S  Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | ▓▓▓▓-6000 |
|---|---|
| SBA Loan Name | It's a Grnd Coffee House |
| Guarantor | Wilfred Diaz |
| Borrower | Itabo Partnership |
| Lender | First California Bank |
| Date | April 17, 2008 |
| Note Amount | 310 000 00 |

1  GUARANTEE

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note  This Guarantee remains
in effect until the Note is paid in full  Guarantor must pay all amounts due under the Note when Lender makes written
demand upon Guarantor  Lender is not required to seek payment from any other source before demanding payment from
Guarantor

2  NOTE

The "Note" is the promissory note dated ____April 17  2008_____ in the principal amount of

Three Hundred Ten Thousand and no/100***************************************************************** Dollars,

from Borrower to Lender  It includes any assumption, renewal, substitution, or replacement of the Note, and multiple
notes under a line of credit

3  DEFINITIONS

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note

"Loan" means the loan evidenced by the Note

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or
anyone who pledges Collateral

"SBA" means the Small Business Administration, an Agency of the United States of America

4    LENDER'S GENERAL POWERS

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor

A    Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note,

B    Refrain from taking any action on the Note, the Collateral, or any guarantee,

C    Release any Borrower or any guarantor of the Note,

D    Compromise or settle with the Borrower or any guarantor of the Note,

E    Substitute or release any of the Collateral, whether or not Lender receives anything in return,

F    Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement,

G    Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses, and

H    Exercise any rights it has, including those in the Note and other Loan Documents

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender

5    FEDERAL LAW

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law

6    RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES

To the extent permitted by law,

A    Guarantor waives all rights to

1)    Require presentment, protest, or demand upon Borrower,

2)    Redeem any Collateral before or after Lender disposes of it,

3)    Have any disposition of Collateral advertised, and

4)    Require a valuation of Collateral before or after Lender disposes of it

B    Guarantor waives any notice of

1)    Any default under the Note,

2)    Presentment dishonor, protest, or demand,

3)    Execution of the Note,

4)    Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses,

5)    Any change in the financial condition or business operations of Borrower or any guarantor,

6)    Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note, and

7)    The time or place of any sale or other disposition of Collateral

C    Guarantor waives defenses based upon any claim that

1)    Lender failed to obtain any guarantee,

2)    Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral,

3)    Lender or others improperly valued or inspected the Collateral,

4)    The Collateral changed in value, or was neglected, lost, destroyed, or underinsured,

SBA Form 148 (10/98) Previous editions obsolete

Wolters Kluwer Financial Services  St Cloud, MN

19

5) Lender impaired the Collateral,

6) Lender did not dispose of any of the Collateral,

7) Lender did not conduct a commercially reasonable sale,

8) Lender did not obtain the fair market value of the Collateral,

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note,

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed,

11) Lender made errors or omissions in Loan Documents or administration of the Loan,

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor

13) Lender impaired Guarantor's suretyship rights,

14) Lender modified the Note terms, other than to increase amounts due under the Note  If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts,

15) Borrower has avoided liability on the Note, or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents

7  DUTIES AS TO COLLATERAL

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee  Lender has no duty to preserve or dispose of any Collateral

8  SUCCESSORS AND ASSIGNS

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns

9  GENERAL PROVISIONS

A  ENFORCEMENT EXPENSES  Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs

B  SBA NOT A CO-GUARANTOR  Guarantor's liability will continue even if SBA pays Lender  SBA is not a co-guarantor with Guarantor  Guarantor has no right of contribution from SBA

C  SUBROGATION RIGHTS  Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full

D  JOINT AND SEVERAL LIABILITY  All individuals and entities signing as Guarantor are jointly and severally liable

E  DOCUMENT SIGNING  Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral

F  FINANCIAL STATEMENTS  Guarantor must give Lender financial statements as Lender requires

G  LENDER'S RIGHTS CUMULATIVE, NOT WAIVED  Lender may exercise any of its rights separately or together, as many times as it chooses  Lender may delay or forgo enforcing any of its rights without losing or impairing any of them

H  ORAL STATEMENTS NOT BINDING  Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee

I  SEVERABILITY  If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect

J  CONSIDERATION  The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan

20

10  STATE-SPECIFIC PROVISIONS

"Guarantor acknowledges that this Guarantee is secured by a Deed of Trust in favor of Lender On real property located in Los Angeles County California  That Deed of Trust contains the following due-on-sale provision

DUE ON SALE - CONSENT BY LENDER  Lender may at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property  or any interest in the Real Property  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property  whether legal  beneficial or equitable, whether voluntary or involuntary  whether by outright sale, deed, installment sale contract  land contract, contract for deed, leasehold interest with a term greater that three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property  or by any other method of conveyance of an interest in the Real Property  However, this option shall not be excercised by Lender if such exercise is prohibited by applicable law

Guarantor waives its rights of subrogation, reimbursement, indemnification  and contribution and any other rights and defenses that are or may become available to the guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive

Guarantor waives all rights and defenses that the guarantor may have because the debtor's debt is secured by real property  This means, among other things
(1) The creditor may collect from the guarantor without first foreclosing on the real or personal property collateral pledged by the debtor
(2) If the creditor forecloses on any real property collateral pledged by the debtor
   (A) The amount of the debt may be reduced by only the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price
   (B) The creditor may collect from the guarantor even if the creditor, by foreclosing on the real property collateral  has destroyed any right the guarantor may have to collect from the debtor

This is an unconditional and irrevocable waiver of any rights and defenses the guarantor may have because the debtor's debt is secured by real property  These rights and defenses include  but are not limited to, any rights or defenses based upon Section 580a, 580b  580d, or 726 of the Code of Civil Procedure

Guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies  such as non-judicial foreclosure with respect to security for a guaranteed obligation  has destroyed the guarantor's rights of subrogation and reimbursement against the principal by operation of Section 580d of the Code of Civil Procedure or otherwise

21

11  GUARANTOR ACKNOWLEDGMENT OF TERMS

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers

12  GUARANTOR NAME(S) AND SIGNATURE(S)

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee

Wilfred Diaz

4/22/00

# EXHIBIT "D"

23



## FIRST AMENDMENT TO BUSINESS LOAN AGREEMENT

**THIS FIRST AMENDMENT TO BUSINESS LOAN AGREEMENT** (the "Amendment"), dated as of January 25, 2013, is entered into by and between Itabo Partnership ("Borrower") and First California Bank ("Lender")

### RECITALS

A   Borrower and Lender are parties to a Business Loan Agreement dated as of April 17, 2008 (the "Agreement")

B   Borrower and Lender have agreed to amend certain terms and conditions of the Agreement in certain respects

C   Borrower and Lender are contemporaneously with this Agreement entering into a Change in Terms Agreement, which may also amend certain terms of the Agreement

### AGREEMENT

Borrower and Lender agree as follows

1   Each of the terms defined in the Agreement, unless otherwise defined herein, shall have the same meaning when used herein

2   The subsection titled **Guaranties** under the section titled **AFFIRMATIVE COVENANTS** of the Agreement is amended in full to read as follows

  **Guaranties**   Prior to disbursement of any loan proceeds, furnish Lender executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amount and under the conditions set forth in the guaranties

| Guarantor | Amount |
|---|---|
| Lazara Diaz | Unlimited |
| Wilfred Diaz | Unlimited |

3   **SMALL BUSINESS JOBS ACT CERTIFICATION**   The following information is requested pursuant to Section 4107(d)(2) of the Small Business Jobs Act of 2010   The law requires an institution to obtain a certification from any business receiving a loan using funds received by the institution under the Small Business Lender Fund   As required by Section 4407(d)(2) of the Small Business Jobs Act of 2010, Borrower hereby certifies to Lender that the principals of Borrower and its affiliates have not been convicted of, or pleaded *nolo contrendre* to, a sex offense against a minor (as such terms are

defined in section 111 of the Sex Offender Registration and Notification Act (42 U S C 16911))    The term "principals" is defined as follows  if a sole proprietorship, the proprietor, if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership, and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity

4    **FACSIMILE AND COUNTERPART**   This Agreement may be executed in two or more counterparts, which, taken together, shall constitute the whole of the agreement as between the parties    Each executed counterpart may be delivered in the form of a photocopy, facsimile, or scanned document, each of which shall have the same legal force and effect as delivery of an original

5    Except as specifically amended above, the Agreement shall remain in full force and effect and is hereby ratified and confirmed   This Amendment and the Agreement shall be read together, as one document

6    Borrower represents and warrants as follows

    (a)    Each of the representations and warranties contained in the Agreement, as amended hereby, is hereby reaffirmed as of the date hereof,

    (b)    The execution, delivery and performance of this Amendment and any note required hereunder are within the Borrower's powers, have been duly authorized by all necessary action, have received all necessary governmental approvals, if any, and do not contravene any law or any contractual restriction binding on Borrower and

    (c)    No event has occurred and is continuing or would result from this Amendment that constitutes an Event of Default under the Agreement, or would constitute an Event of Default but for the requirement that notice be given or time elapse or both

**WITNESS** the due execution hereof as of the date first above written

**BORROWER**

**ITABO PARTNERSHIP**

By _____

    Lazara Diaz, General Partner of Itabo Partnership

By _____

    Wilfred Diaz, General Partner of Itabo Partnership

**LENDER**

**FIRST CALIFORNIA BANK**

By _____

    Authorized Officer

2

25

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $284,330.50 | 01-25-2013 | 02-01-2019 | ●●●46 | 51 / 44 | | SEB | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  Itabo Partnership
247 Pine Avenue
Long Beach, CA  90802

**Lender:**  First California Bank
Camarillo Branch
1150 Paseo Camarillo
Small Business Administration Division
Camarillo, CA  93010

**Principal Amount: $284,330.50**                      **Date of Agreement:  January 25, 2013**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A U.S. Small Business Administration Note, dated as of April 17, 2008, in the original principal amount of Three Hundred Ten Thousand and 00/100 Dollars ($310,000.00), as amended by those certain Change In Terms Agreements, dated as of December 29, 2008 and March 1, 2009.

**DESCRIPTION OF COLLATERAL.** The U.S. Small Business Administration Note is secured by the collateral as described in the Commercial Security Agreement, dated as of April 17, 2008, executed by Grantor/Debtor in favor of Lender.

**DESCRIPTION OF CHANGE IN TERMS.** Effective as of the date of this Agreement, Borrower's next payment will be due on February 1, 2013.

The fourth paragraph under the section titled PAYMENTS TERMS of the U.S. Small Business Administration Note is hereby amended in full to read as follows:

Subject to any changes in the Prime Rate, Borrower will pay this loan in accordance with the following payment schedule using the interest rates described in this paragraph:

18 monthly consecutive principal and interest payments in the initial amount of $2,000.00 each, beginning February 1, 2013, with interest calculated on the unpaid principal balances using an interest rate based on the Wall Street Journal Prime Rate's as published in the Wall Street Journal and announced by Lender (currently 3.250%), plus a margin of 2.500 percentage points, resulting in an initial interest rate of 5.750%.

Upon the Lender's review of Borrower's financial condition and overall peformance, Lender, at its sole discretion, may implement the following repayment plan:

2 Year Payment Plan: 12 monthly consecutive principal and interest payments in the initial amount of $2,700.00 each, beginning August 1, 2014, with interest calculated on the unpaid principal balances using an interest rate based on the then Wall Street Journal Prime Rate's as published in the Wall Street Journal and announced by Lender (currently 3.250%), plus a margin of 2.500 percentage points;

12 monthly consecutive principal and interest payments in the initial amount of $3,402.85 each, beginning August 1, 2015, with interest calculated on the unpaid principal balances using an interest rate based on the then Wall Street Journal Prime Rate's as published in the Wall Street Journal and announced by Lender (currently 3.250%), plus a margin of 2.500 percentage points.

Upon completion of the payment schedule above, remaining principal balance outstanding under the Note shall be re-negotiated at Lender's sole discretion.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**COMMERCIAL GUARANTY.** This Note is supported by two (2) U.S. Small Business Administration Unconditional Guaranties, dated as of April 17, 2008.

**RELEASE PROVISION.** Borrower releases and discharges Lender and whether past or present, Lender's directors, officers, employees, shareholders, partners, subsidiaries, parent companies, affiliates, representatives, agents, attorneys, heirs, executors, administrators, successors-in-interest and assigns of and from any and all liabilities, damages, demands, manners of action, causes of action, suits, debts, liens, sums of money, costs, expenses, attorneys' fees, taxes, fines, penalties, forfeitures, accounts, controversies, agreements, promises and claims whatsoever, in law or in equity, which the parties hereto may now have, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, arising out of or respecting any past or present matter, cause or thing. It is expressly understood and agreed that Borrower is hereby waiving and surrendering their rights pursuant to Section 1542 of the Civil Code of the State of California which provides as follows:

"A general release does not extend to claims which a creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Borrower has obtained or has had the opportunity to obtain the advice of legal counsel prior to the execution of this Agreement. Borrower executes this Agreement voluntarily and with full knowledge of its significance and with the express intention of extinguishing any and all obligations and claims arising out of or connected with the matters specified.

**VENUE AND JURISDICTION.** The party(ies) and/or undersigned to this Agreement and Lender agree that all actions or proceedings arising in connection with this Agreement and the other agreements, instruments and documents executed and/or delivered by the party(ies)/undersigned and Lender in connection herewith shall be tried and litigated only in the State and Federal courts located in the county of Ventura, Los Angeles, Orange, San Bernardino, Riverside, San Diego and San Luis Obispo, State of California, as Lender may elect, provided, however, that any suit seeking enforcement against any collateral or other property may be brought, at Lender's option, in the courts of any jurisdiction where Lender elects to bring such action or where such collateral or other property may be found. The party(ies)/undersigned to this Agreement and Lender waive, to the extent permitted under applicable law, any right each may have to assert the doctrine of forum non conveniens or to object to venue to the extent any proceeding is brought in accordance with this paragraph. The undersigned consents to the full personal jurisdiction of any state or federal court in California.

**FACSIMILE AND COUNTERPART.** This Agreement may be executed in two or more counterparts, which, taken together, shall constitute the

26

Loan No: ⬤46

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Page 2

whole of the agreement as between the parties. Each executed counterpart may be delivered in the form of a photocopy, facsimile, or scanned document, each of which shall have the same legal force and effect as delivery of an original.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

ITABO PARTNERSHIP

By: _____
Lazara Diaz, General Partner of Itabo Partnership

By: _____
Wilfred Diaz, General Partner of Itabo Partnership

LASER PRO Lending, Ver. 5.60.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2013.  All Rights Reserved.  - CA  P:\CFI\WIN\CFI\LPL\D20C.FC  TR-4171  PR-8

27



## REAFFIRMATION OF U S SMALL BUSINESS ADMINISTRATION
## UNCONDITIONAL GUARANTEE

This Reaffirmation of U S Small Business Administration Unconditional Guarantee is dated as of January 25, 2013   Where as **Lazara Diaz ("Guarantor")** has executed and delivered to First **California Bank ("Lender")** a U S Small Business Administration Unconditional Guarantee dated as of April 17, 2008 for the obligations of **Itabo Partnership ("Debtor")** to Lender   Lender has advised the Guarantor that it has or may have modified its financing arrangements with Debtor, and as a condition to such modification, Lender has required that the Guarantor execute and deliver this document

In consideration for the Lender providing financing to Debtor, as recently modified, the Guarantor hereby agrees with Lender as follows

1    The U S Small Business Administration Unconditional Guarantee remains in full force and effect and includes all present and future obligations of Debtor to Lender

2    The principal amount guaranteed by the Guarantor pursuant to the U S Small Business Administration Unconditional Guarantee is unlimited

3    To the extent that the Guarantor's obligations under the U S Small Business Administration Unconditional Guarantee are secured, the collateral securing the U S Small Business Administration Unconditional Guarantee includes all present and future obligations under the U S Small Business Administration Unconditional Guarantee, as amended hereby

4    **California Vehicle Code Acknowledgement**   Guarantor agrees to waive their rights under the California Vehicle Code Sections 1808 21, 1808 22 or 1808 23, regarding the disclosure of Guarantor's residential address

5    **Release Provision**   Guarantor releases and discharges Lender and whether past or present, Lender's directors, officers, employees, shareholders, partners, subsidiaries, parent companies, affiliates, representatives, agents, attorneys, heirs, executors, administrators, successors-in-interest and assigns of and from any and all liabilities, damages, demands, manners of action, causes of action, suits, debts, liens, sums of money, costs, expenses, attorneys' fees, taxes, fines, penalties, forfeitures, accounts, controversies, agreements, promises and claims whatsoever, in law or in equity, which the parties hereto may now have, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, arising out of or respecting any past or present matter, cause or thing   It is expressly understood and agreed that Guarantor is hereby waiving and surrendering their rights pursuant to Section 1542 of the Civil Code of the State of California which provides as follows

"A general release does not extend to claims which a creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor "

Guarantor has obtained or has had the opportunity to obtain the advice of legal counsel prior to the execution of this Agreement   Guarantor executes this Agreement voluntarily

1



and with full knowledge of its significance and with the express intention of extinguishing any and all obligations and claims arising out of or connected with the matters specified

6    Except as expressly provided herein, the U S Small Business Administration Unconditional Guarantee shall not be modified or amended

7    This Agreement may be executed in two or more counterparts, which, taken together, shall constitute the whole of the agreement as between the parties Each executed counterpart may be delivered in the form of a photocopy, facsimile, or scanned document, each of which shall have the same legal force and effect as delivery of an original

Guarantor

X _____

Lazara Diaz

2

29



## REAFFIRMATION OF U S SMALL BUSINESS ADMINISTRATION UNCONDITIONAL GUARANTEE

This Reaffirmation of U S Small Business Administration Unconditional Guarantee is dated as of January 25, 2013   Where as **Wilfred Diaz ("Guarantor")** has executed and delivered to First **California Bank ("Lender")** a U S Small Business Administration Unconditional Guarantee dated as of April 17, 2008 for the obligations of **Itabo Partnership ("Debtor")** to Lender   Lender has advised the Guarantor that it has or may have modified its financing arrangements with Debtor, and as a condition to such modification, Lender has required that the Guarantor execute and deliver this document

In consideration for the Lender providing financing to Debtor, as recently modified, the Guarantor hereby agrees with Lender as follows

1    The U S Small Business Administration Unconditional Guarantee remains in full force and effect and includes all present and future obligations of Debtor to Lender

2    The principal amount guaranteed by the Guarantor pursuant to the U S Small Business Administration Unconditional Guarantee is unlimited

3    To the extent that the Guarantor's obligations under the U S Small Business Administration Unconditional are secured, the collateral securing the U S Small Business Administration Unconditional Guarantee includes all present and future obligations under the U S Small Business Administration Unconditional Guarantee, as amended hereby

4    **California Vehicle Code Acknowledgement**   Guarantor agrees to waive their rights under the California Vehicle Code Sections 1808 21, 1808 22 or 1808 23, regarding the disclosure of Guarantor's residential address

5    **Release Provision**   Guarantor releases and discharges Lender and whether past or present, Lender's directors, officers, employees, shareholders, partners, subsidiaries, parent companies, affiliates, representatives, agents, attorneys, heirs, executors, administrators, successors-in-interest and assigns of and from any and all liabilities, damages, demands, manners of action, causes of action, suits, debts, liens, sums of money, costs, expenses, attorneys' fees, taxes, fines, penalties, forfeitures, accounts, controversies, agreements, promises and claims whatsoever, in law or in equity, which the parties hereto may now have, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, arising out of or respecting any past or present matter, cause or thing   It is expressly understood and agreed that Guarantor is hereby waiving and surrendering their rights pursuant to Section 1542 of the Civil Code of the State of California which provides as follows

"A general release does not extend to claims which a creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor "

Guarantor has obtained or has had the opportunity to obtain the advice of legal counsel prior to the execution of this Agreement   Guarantor executes this Agreement voluntarily

I

30

and with full knowledge of its significance and with the express intention of extinguishing any and all obligations and claims arising out of or connected with the matters specified

6    Except as expressly provided herein, the U S Small Business Administration Unconditional Guarantee shall not be modified or amended

7    This Agreement may be executed in two or more counterparts, which, taken together, shall constitute the whole of the agreement as between the parties   Each executed counterpart may be delivered in the form of a photocopy, facsimile, or scanned document, each of which shall have the same legal force and effect as delivery of an original

Guarantor

X _____
Wilfred Diaz

2

31

# EXHIBIT"E"

32

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $310,000.00 | 04-17-2008 | 11-01-2018 | ●46 | 51 / 94 | | RD | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "****" has been omitted due to text length limitations

**Grantor**    Itabo Partnership
247 Pine Avenue
Long Beach, CA 90802

**Lender**    First California Bank
Irvine Office
Small Business Administration Division
19752 Mac Arthur Boulevard
Irvine, CA 92612

**THIS COMMERCIAL SECURITY AGREEMENT** dated April 17, 2008, is made and executed between Itabo Partnership ( Grantor ) and First California Bank ( Lender )

**GRANT OF SECURITY INTEREST**  For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law

**COLLATERAL DESCRIPTION**  The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement

All of the following property  wherever located and whether the debtor now has an interest therein or acquires an interest hereafter Except where the meaning of the terms is expressly enlarged or expanded, the terms used herein shall have the meaning set forth in Division 9 of the California Commercial Code in effect on the date of this agreement

All accounts  including but not limited to, accounts receivable, open accounts, accounts stated, contract rights, and any other rights to payment for any tangible or intangible property sold, licensed  assigned, leased  or rented (including short-term rentals for less than one day) or for services rendered  whether or not earned by performance, and any ancillary rights related thereto  All chattel paper, All deposit accounts, including but not limited to demand, savings, NOW, time certificates of deposit, and other similar accounts  All equipment, including but not limited to, furniture, machinery  office equipment  tools, and all additions and accessions thereto  All general intangibles, including but not limited to, causes of action, choses-in-action, deposits judgments, copyrights, mask works  deposit accounts  franchises, goodwill  insurance policies and proceeds  leases, rents, licenses, partnership interests, interests in limited liability companies, patent applications, patents, rights to payment or performance, service marks  tax refunds, trademarks, trade names, and trade secrets, All commercial tort claims, All letters of credit and letter-of credit rights,    All instruments, including but not limited to  all promissory notes and certificates of deposit,  All investment properties, financial assets, security entitlements, and brokerage accounts including but not limited to all securities, stocks, bonds  bills, notes, options, and warrants, whether certificated or uncertificated, All documents of title, including but not limited to, all bills of lading, warehouse receipts  airbills, and shipper receipts  All inventory, including but not limited to, raw materials  work-in-process  materials used or consumed in business, goods held for sale  license  lease, or short-term rental  or goods to be furnished under contracts of service  or goods so leased, rented, or furnished, returned or repossessed goods, stock-in-trade, reclaimed goods, rights of reclamation, and rights of stoppage-in-transit, All fixtures, including but not limited to, leasehold improvements, heavy equipment, and any other goods which are or are to become fixtures, All books and records, however stored or maintained and wherever located, relating to the foregoing, and all equipment  licenses, contract rights, and general intangibles employed in storing maintaining  and retrieving such books and records, All insurance policies and insurance proceeds relating to the foregoing, All proceeds of the foregoing, including but not limited to, accounts  accounts receivable, contract rights, chattel paper  commercial tort claims, deposit accounts, letters of credit and letter-of-credit rights, documents of title, equipment  fixtures  general intangibles, instruments, inventory investment properties, financial assets  and securities  Grantor is not authorized to sell, lease, or otherwise dispose of any of the collateral without the prior written consent of the Secured Party, except that Grantor may sell inventory but only in the ordinary course of business, whether any of the foregoing is owned now or acquired later, all accessions  additions, replacements  and substitutions relating to any of the foregoing, all records of any kind relating to any of the foregoing  all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds)

In addition, the word  Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located

(A)  All accessions, attachments  accessories, replacements of and additions to any of the collateral described herein, whether added now or later

(B)  All products and produce of any of the property described in this Collateral section

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media

**GRANTOR S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL**  With respect to the Collateral, Grantor represents and promises to Lender that

**Perfection of Security Interest**  Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral  Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender

**Notices to Lender**  Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any  (1)  change in Grantor's name,  (2)  change in Grantor's assumed business name(s),  (3)  change in the partners of the partnership, including the addition of new partners or the departure of current partners from the partnership Grantor

33

COMMERCIAL SECURITY AGREEMENT
(Continued)

Loan No ▓46

Page 2

(4) change in the authorized signer(s), (5) change in Grantor's principal office address, (6) change in Grantor's state of organization, (7) conversion of Grantor to a new or different type of business entity, or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name, state or organization, or principal office address will take effect until after Lender has received notice

**No Violation** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its partnership agreement does not prohibit any term or condition of this Agreement

**Enforceability of Collateral** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing

**Location of the Collateral** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following (1) all real property Grantor owns or is purchasing, (2) all real property Grantor is renting or leasing, (3) all storage facilities Grantor owns, rents, leases, or uses, and (4) all other properties where Collateral is or may be located

**Removal of the Collateral** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral

**Transactions Involving Collateral** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds, provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender

**Title** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender s rights in the Collateral against the claims and demands of all other persons

**Repairs and Maintenance** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral

**Inspection of Collateral** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located

**Taxes, Assessments and Liens** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized

**Compliance with Governmental Requirements** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, including without limitation all environmental laws, ordinances, rules and regulations, now or hereafter in effect, applicable to the ownership, production, disposition or use of the Collateral including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized

**Hazardous Substances** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor s due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement

**Maintenance of Casualty Insurance** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this

34

Loan No ____46

## COMMERCIAL SECURITY AGREEMENT
(Continued)

Page 3

Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral

**Application of Insurance Proceeds**   Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $1,000 00, whether or not such casualty or loss is covered by insurance   Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty   All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral   If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure,  pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration   If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor   Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness

**Insurance Reserves**   Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid   If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender   The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due   Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor   The responsibility for the payment of premiums shall remain Grantor's sole responsibility

**Insurance Reports**   Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following  (1) the name of the insurer, (2) the risks insured, (3) the amount of the policy, (4) the property insured, (5)  the then current value on the basis of which insurance has been obtained and the manner of determining that value, and (6) the expiration date of the policy   In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral

**Financing Statements**   Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest   At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property   Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs   Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default   Lender may file a copy of this Agreement as a financing statement   If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change

**GRANTOR S RIGHT TO POSSESSION**   Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral   If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care   Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness

**LENDER'S EXPENDITURES**   If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral   All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor   All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A) be payable on demand,  (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1) the term of any applicable insurance policy, or  (2) the remaining term of the Note, or (C) be treated as a balloon payment which will be due and payable at the Note's maturity   The Agreement also will secure payment of these amounts   Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default

**DEFAULT**   Each of the following shall constitute an Event of Default under this Agreement

**Payment Default**   Grantor fails to make any payment when due under the Indebtedness

**Environmental Default**   Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Indebtedness

**Other Defaults**   Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor

**Default in Favor of Third Parties**   Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents

**False Statements**   Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor s behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter

**Defective Collateralization**   This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason

**Insolvency**   The dissolution or termination of Grantor's existence as a going business or the death of any partner, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor



COMMERCIAL SECURITY AGREEMENT
(Continued)

Creditor or Forfeiture Proceedings   Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness   This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender   However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute

Events Affecting Guarantor   Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness

Adverse Change   A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired

Cure Provisions   If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default   (1)  cures the default within fifteen (15) days, or  (2)  if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical

RIGHTS AND REMEDIES ON DEFAULT   If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the California Uniform Commercial Code   In addition and without limitation, Lender may exercise any one or more of the following rights and remedies

Accelerate Indebtedness   Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor

Assemble Collateral   Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral   Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender   Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral   If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession

Sell the Collateral   Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor   Lender may sell the Collateral at public auction or private sale   Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made   However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale   The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition   All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid

Appoint Receiver   Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness   The receiver may serve without bond if permitted by law   Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount   Employment by Lender shall not disqualify a person from serving as a receiver

Collect Revenues, Apply Accounts   Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral   Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine   Insofar as the Collateral consists of accounts, general intangibles, insurance policies instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due   For these purposes, Lender may, on behalf of and in the name of Grantor, receive open and dispose of mail addressed to Grantor, change any address to which mail and payments are to be sent, and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral   To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender

Obtain Deficiency   If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement   Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper

Other Rights and Remedies   Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time   In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise

Election of Remedies   Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently   Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies

CHOICE OF VENUE   Borrower and Lender agree that all actions or proceedings arising in connection with this Agreement and the other agreements, instruments and documents executed and/or delivered by Borrower and/or Lender in connection herewith shall be tried and litigated only in the State and Federal courts located in the county of Ventura, Los Angeles or Orange, State of California, as Lender may elect, provided, however, that any suit seeking enforcement against any collateral or other property may be brought, at Lender's option, in the courts of any jurisdiction where Lender elects to bring such action or where such collateral or other property may be found   Borrower and Lender waive, to the extent permitted under applicable law, any right each may have to assert the doctrine of forum non conveniens or to object to venue to the extent any proceeding is brought in accordance with this paragraph

SBA LOAN PROVISION   The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners   If the United States is seeking to enforce this document, then under SBA


36

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No ▆▆46

Page 5

regulation

(a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law

(b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument

**MISCELLANEOUS PROVISIONS** The following miscellaneous provisions are a part of this Agreement

**Amendments** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment

**Attorneys Fees, Expenses** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services Grantor also shall pay all court costs and such additional fees as may be directed by the court

**Caption Headings** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement

**Governing Law** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions This Agreement has been accepted by Lender in the State of California

**Preference Payments** Any monies Lender pays because of an asserted preference claim in Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Grantor as provided in this Agreement

**No Waiver by Lender** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender

**Notices** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors

**Power of Attorney** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral

**Waiver of Co-Obligor's Rights** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration

**Severability** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable If the offending provision cannot be so modified, it shall be considered deleted from this Agreement Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality validity or enforceability of any other provision of this Agreement

**Successors and Assigns** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor s successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness

**Survival of Representations and Warranties** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full

**Time is of the Essence** Time is of the essence in the performance of this Agreement

**DEFINITIONS** The following capitalized words and terms shall have the following meanings when used in this Agreement Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code

**Agreement** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time

37

**COMMERCIAL SECURITY AGREEMENT**
(Continued)

Loan No ⬛746                                                                                                Page 6

---

**Borrower**  The word "Borrower" means Itabo Partnership and includes all co-signers and co-makers signing the Note and all their successors and assigns

**Collateral**  The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement

**Default**  The word "Default" means the Default set forth in this Agreement in the section titled "Default"

**Environmental Laws**  The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U S C Section 9601, et seq ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub L No 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U S C Section 1801, et seq , the Resource Conservation and Recovery Act, 42 U S C Section 6901, et seq , Chapters 6 5 through 7 7 of Division 20 of the California Health and Safety Code, Section 25100, et seq , or other applicable state or federal laws, rules, or regulations adopted pursuant thereto

**Event of Default**  The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement

**Grantor**  The word "Grantor" means Itabo Partnership

**Guarantor**  The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness

**Guaranty**  The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note

**Hazardous Substances**  The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled  The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws  The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos

**Indebtedness**  The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents

**Lender**  The word "Lender" means First California Bank, its successors and assigns

**Note**  The word "Note" means any Note, including but not limited to, the U S Small Business Administration Note, dated April 17, 2008, in the original principal amount of $310,000 00 from Borrower to Lender, together with all renewals of, extension of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement and any all future promissory notes thereafter

**Property**  The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement

**Related Documents**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS THIS AGREEMENT IS DATED APRIL 17  2008**

**GRANTOR**

**ITABO PARTNERSHIP**

By _____          By _____
Lazara Diaz, General Partner of Itabo Partnership          Wilfred Diaz, General Partner of Itabo Partnership



**U S  Small Business Administration**

## SECURITY AGREEMENT

| SBA Loan # | ⬛⬛⬛-6000 |
|---|---|
| SBA Loan Name | It's a Grand Coffee House |
| Debtor (Exact full legal name of individual(s), corporation, LLC, partnership, or other organization) | Itabo Partnership |
| Borrower | Itabo Partnership |
| Secured Party | First California Bank |
| Date | April 17, 2008 |
| Note Amount | $310,000 00 |

1  DEFINITIONS

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text

of the Uniform Commercial Code, as it may be amended from time to time, (' UCC'") ' SBA" means the Small Business

Administration, an Agency of the U S  Government

2  GRANT OF SECURITY INTEREST

For value received  the Debtor grants to the Secured Party a security interest in the property described below in paragraph 4

(the  'Collateral )

3  OBLIGATIONS SECURED

This Agreement secures the payment and performance of  (a) all obligations under a Note dated April 17, 2008, made

SBA Form 1059 (2 04) Previous Editions are obsolete

Wolters Kluwer Financial Services, St  Cloud, MN

39

by  Itabo Partnership                                                                 made payable to

First California Bank                                                                 in the amount

of $  $310 000 00                      ("Note ) including all costs and expenses (including reasonable attorney's

fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note  (b) all
costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and
enforcement of the security interest hereby granted  (c) all obligations of the Debtor in any other agreement relating to the
Note, and (d) any modifications, renewals  refinancings  or extensions of the foregoing obligations

The Note and all other obligations secured hereby are collectively called the "Obligations "

### 4  COLLATERAL DESCRIPTION

The Collateral in which this security interest is granted is all of the Debtor's property described below, and indicated by an
"X'  or other mark on the applicable line, now owned or hereafter acquired, together with all replacements, accessions
proceeds  and products

- [x] a  Equipment
- [x] b  Fixtures
- [x] c  Inventory
- [x] d  Accounts
- [ ] e  Instruments

- [ ] f  Chattel paper
- [x] g  General intangibles
- [x] h  Documents
- [ ] i  Farm products
- [x] j  Deposit accounts
- [x] k  Investment property

- [ ] l  Titled motor vehicles  including mobile or manufactured homes (list make, model  and serial #)

- [ ] m  Other  Insert specific description of other forms of Collateral not included in categories a through k above (for
example, specific commercial tort claim, letter-of-credit rights)

### 5  RESTRICTIONS ON COLLATERAL TRANSFER

Debtor will not sell  lease  license or otherwise transfer (including by granting security interests, liens, or other encumbrances
in) all or any part of the Collateral or Debtor's interest in t he Collateral without Secured Party's written or electronically
communicated approval  except that Debtor may sell  inventory in the ordinary course of business on customary terms
Debtor may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of
business  until notified otherwise by Secured Party in writing or by electronic communication

40



**6 MAINTENANCE AND LOCATION OF COLLATERAL  INSPECTION  INSURANCE**

Debtor must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location  Debtor hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice  Debtor must  (a) maintain the Collateral in good condition  (b) pay promptly all taxes, judgments  or charges of any kind levied or assessed thereon  (c) keep current all rent or mortgage payments due  if any, on premises where the Collateral is located  and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral)  and including such terms as Secured Party may require including a Lender s Loss Payable Clause in favor of Secured Party or assessed thereon  keep current all rent due on premises where Collateral is located  and maintain insurance on all Collateral  Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and to be in the possession of Secured Party and to contain a Lender's Loss Payable Clause naming Secured Party in a manner empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments

**7 CHANGES TO DEBTOR'S LEGAL STRUCTURE  PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION  OR NAME**

Debtor must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions  (a) changing or reorganizing the type of organization or form under which it does business  (b) moving changing its place of business or adding a place of business  (c) changing its jurisdiction of organization  or (d) changing its name  Debtor will pay for the preparation and filing of all documents  Secured Party deems necessary to maintain  perfect and continue the perfection of Secured Party s security interest in the event of any such change

**8 PERFECTION OF SECURITY INTEREST**

Debtor consents  without further notice  to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest  Upon request of Secured Party, Debtor must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral  Debtor will pay the filing and recording costs of any documents relating to Secured Party s security interest  Debtor ratifies all previous filings and recordings  including financing statements and notations on certificates of title  Debtor will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property  or in otherwise obtaining control or possession of that or any other Collateral

**9 DEFAULT**

Debtor is in default under this Agreement if  (a) Debtor fails to pay  perform or otherwise comply with any provision of this Agreement  (b) Debtor makes any materially false representation  warranty or certification in  or in connection with  this Agreement  the Note  or any other agreement related to the Note or this Agreement  (c) another secured party or judgment creditor exercises its rights against the Collateral  or (d) an event defined as a "default" under the Obligations occurs  In the event of default and if Secured Party requests, Debtor must assemble and make available all Collateral at a place and time designated by Secured Party  Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable  and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Debtor or the Collateral is located  Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Debtor waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person

Wolters Kluwer Financial Services, St  Cloud, MN

41

10 FEDERAL RIGHTS

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents giving notice, enforcing security interests or liens and for any other purposes. By using such procedures SBA does not waive any federal immunity from state or local control, penalty tax or liability. As to this Agreement Debtor may not claim or assert any local or state law against SBA to deny any obligation defeat any claim of SBA, or preempt federal law.

11 GOVERNING LAW

Unless SBA is the holder of the Note, in which case federal law will govern, Debtor and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Debtor is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12 Secured party rights

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13 SEVERABILITY

If any provision of this Agreement is unenforceable all other provisions remain in effect.

14 DEBTOR CERTIFICATIONS

Debtor certifies that (a) its Name (or Names) as stated above is correct (b) all Collateral is owned or titled in the Debtor's name and not in the name of any other organization or individual (c) Debtor has the legal authority to grant the security interest in the Collateral, (d) Debtor's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party), (e) none of the Obligations are or will be primarily for personal, family or household purposes, (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal family or household purposes, and (g) Debtor has read and understands the meaning and effect of all terms of this Agreement.

15 DEBTOR NAME(S) AND SIGNATURE(S)

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Debtor under this Agreement.

IN WITNESS WHEREOF,

Itaba Partnership

Lazara Diaz, General Partner

Wilfred Diaz, General Partner

# EXHIBIT "F"

43

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone (800) 689-0091 Fax (3100 634-0345

**B. SEND ACKNOWLEDGMENT TO (Name and Address)**

4503 FIRST CALIFORNI

First California Bank
2200 Sepulveda Boulevard
Torrance CA, 90501

36582085

CALI

File with  Secretary of State, CA

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number  1373447340
File Date   14-Jan-2013

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| | |
|---|---|
| 1a. INITIAL FINANCING STATEMENT FILE #<br>087155436564  4/25/2008  SS CA | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |

2 ☐ **TERMINATION** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement

3 ☒ **CONTINUATION** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

4 ☐ **ASSIGNMENT** (full or partial) Give name of assignee in item 7a or 7b and address of assignee in item 7c, and also give name of assignor in item 9

5 AMENDMENT (PARTY INFORMATION) This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7

☐ CHANGE name and/or address. Please refer to the detailed instructions in regards to changing the name/address of a party
☐ DELETE name. Give record name to be deleted in item 6a or 6b
☐ ADD name. Complete item 7a or 7b and also item 7c; also complete items 7e-7g (if applicable)

**6 CURRENT RECORD INFORMATION**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7 CHANGED (NEW) OR ADDED INFORMATION**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID # if any | ☐ NONE |
|---|---|---|---|---|---|

8 AMENDMENT (COLLATERAL CHANGE) check only one box.

Describe collateral ☐ deleted or ☐ added  or give entire ☐ restated collateral description or describe collateral ☐ assigned

9 NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor if this is an Assignment) If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor or if this is a Termination authorized by a Debtor check here ☐ and enter name of DEBTOR authorizing this Amendment

| 9a. ORGANIZATION'S NAME<br>First California Bank | | | |
|---|---|---|---|
| OR  9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10 OPTIONAL FILER REFERENCE DATA    Debtor Name  Itabo Partnership
●●●085           ●●46

FILING OFFICE COPY - UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV  05/22/02)

Prepared by CT Lien Solutions [3.23.0]

44

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| 9 NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT | | |
|---|---|---|
| 9a ORGANIZATION NAME **Itabo Partnership** | | |
| OR 9b INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME |

10 MISCELLANEOUS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11 ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** Insert only one debtor name(11a or 11b)  do not abbreviate or combine names

| 11a ORGANIZATION NAME | | | |
|---|---|---|---|
| OR 11b INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 11c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e TYPE OF ORGANIZATION | 11f JURISDICTION OF ORGANIZATION | 11g ORGANIZATIONAL ID# if any | NONE |
|---|---|---|---|---|---|

**12** ☒ **ADDITIONAL SECURED PARTY's or** ☐ **ASSIGNOR S/P'S NAME** Insert only one name (12a or 12b)

| 12a ORGANIZATION NAME | | | |
|---|---|---|---|
| OR 12b INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 12c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13 This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral  or is filed as a ☐ fixture filing

14 Description of real estate

16 Additional Collateral description

claims  deposit accounts  letters of credit and letter-of-credit rights  documents of title, equipment  fixtures  general intangibles  instruments  inventory  investment properties financial assets  and securities   Grantor is not authorized to sell  lease  or otherwise dispose of any of the collateral without the prior written consent of the Secured Party except that Grantor may sell inventory but only in the ordinary course of business, whether any of the foregoing is owned now or acquired later, all accessions, additions, replacements and substitutions relating to any of the foregoing  all records of any kind relating to any of the foregoing  all proceeds relating to any of the foregoing (including insurance  general intangibles and accounts proceeds)  whether any of the foregoing is owned now or acquired later, all accessions, additions  replacements, and substitutions relating to any of the foregoing  all records of any kind relating to any of the foregoing  all proceeds relating to any of the foregoing (including insurance  general intangibles and accounts proceeds)

15 Name and address of a RECORD OWNER of above-described real estate
   (if Debtor does not have a record interest)

17 Check only if applicable and check only one box
Debtor is a ☐ Trust  or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

18 Check only if applicable and check only one box
☐ Debtor is a TRANSMITTING UTILITY
☐ Filing in connection with a Manufactured-Home Transaction  effective 30 years
☐ Filing in connection with a Public-Finance Transaction  effective 30 years

FILING OFFICE COPY  UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV  05/22/02)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A NAME & PHONE OF CONTACT AT FILER [optional]
Phone (800) 331-3282 Fax (818) 662-4141

B SEND ACKNOWLEDGEMENT TO (Name and Address)

UCC Direct Services
P O Box 29071
Glendale, CA 91209-9071

14196817

CA, Secretary of State

UCC Direct Services
Representation of filing

This filing is Completed
File Number 087155436564
File Date   25-APR 2008

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1 DEBTOR'S EXACT FULL LEGAL NAME  Insert only one debtor name(1a or 1b)  do not abbreviate or combine names

| 1a ORGANIZATION NAME | | | |
|---|---|---|---|
| 1b INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c MAILING ADDRESS 247 Pine Avenue | CITY Long Beach | STATE CA / POSTAL CODE 90802 | COUNTRY USA |
| 1d SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e TYPE OF ORGANIZATION General Partnership | 1f JURISDICTION OF ORGANIZATION CA | 1g ORGANIZATIONAL ID# if any ☒ NONE |

2 ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME  Insert only one debtor name(2a or 2b)  do not abbreviate or combine names

| 2a ORGANIZATION NAME | | | |
|---|---|---|---|
| 2b INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 2d SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e TYPE OF ORGANIZATION | 2f JURISDICTION OF ORGANIZATION | 2g ORGANIZATIONAL ID# if any ☐ NONE |

3 SECURED PARTY'S (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)  Insert only one secured party name (3a or 3b)

| 3a ORGANIZATION NAME First California Bank | | | |
|---|---|---|---|
| 3b INDIVIDUAL LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c MAILING ADDRESS Small Business Administration Divis, Ion | CITY Irvine | STATE CA / POSTAL CODE 92612 | COUNTRY USA |

4 This FINANCING STATEMENT covers the following collateral

All of the following property wherever located and whether the debtor now has an interest therein or acquires an interest hereafter  Except where the meaning of the terms is expressly enlarged or expanded  the terms used herein shall have the meaning set forth in Division 9 of the California Commercial Code in effect on the date of this agreement All accounts  including but not limited to  accounts receivable  open accounts  accounts stated  contract rights  and any other rights to payment for any tangible or intangible property sold  licensed  assigned  leased  or rented (including short-term rentals for less than one day) or for services rendered  whether or not earned by performance  and any ancillary rights related thereto  All chattel paper  All deposit accounts, including but not limited to demand  savings  NOW  time certificates of deposit, and other similar accounts  All equipment  including but not limited to, furniture  machinery  office equipment  tools  and all additions and accessions thereto  All general intangibles  including but not limited to  causes of action  choses-in-action  deposits  judgments  copyrights  mask works  deposit accounts  franchises  goodwill  insurance policies and proceeds  leases  rents  licenses  partnership interests  interests in limited liability companies  patent applications  patents  rights to payment or performance  service marks, tax refunds  trademarks  trade names, and trade secrets  All commercial tort claims  All letters of credit and letter-of-credit rights  All instruments, including but not limited to  all promissory notes and certificates of deposit,All investment properties  financial assets  security entitlements  and brokerage accounts  including but not limited to all securities  stocks, bonds  bills, notes  options  and warrants  whether certificated or uncertificated  All documents of title, including but not limited to, all bills of lading  warehouse receipts, airbills, and shipper receipts, All inventory, including but not limited to  raw materials, work-in-process  materials used or consumed in business, goods held for sale, license, lease, or short-term rental, or goods to be furnished under contracts of service, or goods so leased  rented  or furnished  returned or repossessed goods  stock-in-trade  reclaimed goods  rights of reclamation, and rights of stoppage in-transit  All fixtures  including but not limited to  leasehold improvements  heavy equipment, and any other goods which are or are to become fixtures  All books and records, however stored or maintained and wherever located  relating to the foregoing  and all equipment  licenses  contract rights, and general intangibles employed in storing, maintaining  and retrieving such books and records  All insurance policies and insurance proceeds relating to the foregoing  All proceeds of the foregoing  including but not limited to  accounts  accounts receivable  contract rights  chattel paper  commercial tort

| 5 ALTERNATE DESIGNATION [if applicable] | ☐ LESEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG LIEN | ☐ NON UCC FILING |
|---|---|---|---|---|---|---|

| 6 This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS  Attach Addendum [if applicable] | Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|---|

8 OPTIONAL FILER REFERENCE DATA
30381789

FILING OFFICE COPY  UCC FINANCING STATEMENT (FORM UCC1)  (REV 05/02/02)

46

# EXHIBIT "G"

47

APPROVED
May 20, 2013

TEVEIA R. BARNES
Commissioner of
Financial Institutions

By

JAMES M. PATTEN
Senior Counsel

STRICTLY CONFIDENTIAL
EXECUTION VERSION

FILED
Secretary of State
State of California

MAY 3 1 2013

**AGREEMENT OF MERGER**

THIS AGREEMENT OF MERGER, dated as of May 13, 2013 (this "**Merger Agreement**"), is made and entered into by and between Pacific Western Bank, a California state-chartered bank ("**Surviving Corporation**") and First California Bank, a California state-chartered bank ("**Disappearing Corporation**").

## WITNESSETH:

WHEREAS, PacWest Bancorp (the holding company of Surviving Corporation) ("**Parent**") and First California Financial, Inc. (the holding company of Disappearing Corporation) (the "**Company**") are parties to an Agreement and Plan of Merger, dated as of November 6, 2012 (as it may be amended from time to time, the "**HoldCo Merger Agreement**") pursuant to which the Company shall merge with and into Parent, with Parent as the surviving corporation (the "**HoldCo Merger**").

WHEREAS, the HoldCo Merger Agreement contemplates the simultaneous merger of the Disappearing Corporation with and into the Surviving Corporation, with the Surviving Corporation as the surviving corporation in the merger (the "**Merger**").

WHEREAS, the Board of Directors of each of Surviving Corporation and Disappearing Corporation have approved, and deem it advisable and in the best interests of Surviving Corporation or Disappearing Corporation, as applicable, and their respective shareholders, that Surviving Corporation and Disappearing Corporation consummate the Merger.

WHEREAS, each of Parent and the Company, as the sole shareholders respectively of Surviving Corporation and Disappearing Corporation have executed written consents approving and adopting this Merger Agreement.

NOW, **THEREFORE**, in consideration of the promises and mutual agreements contained in this Merger Agreement, the parties to this Merger Agreement hereby agree that Disappearing Corporation shall be merged with and into Surviving Corporation in accordance with the provisions of the laws of the State of California and upon the terms and subject to the conditions set forth in this Merger Agreement:

Section 1. The Merger.

1.1      **Effective Time.** As provided in Financial Code section 4887, after all conditions set forth in Section 4 hereof have been satisfied and the Commissioner has endorsed his approval on the Merger Agreement, the Merger Agreement shall be filed with the Secretary of State of the State of California. After the Merger Agreement has been filed with the Secretary of State of the State of California, a copy of the Merger Agreement certified by the Secretary of State shall be filed with the Commissioner, and at that time the Merger shall be effective for all purposes (the "**Effective Time**"), with it being understood that the parties intend for the Effective Time to be simultaneous with the effective time of the HoldCo Merger and shall take such actions as are necessary or desirable to carry out, implement and evidence such understanding.

W/2031329

1.2    **Effect of the Merger.**  At the Effective Time, Disappearing Corporation shall be merged with and into Surviving Corporation and the separate corporate existence of Disappearing Corporation shall cease. Surviving Corporation shall be the surviving corporation in the Merger. It shall thereupon succeed, without other transfer, to all rights and properties of, and shall be subject to all the debts and liabilities of, Disappearing Corporation and the separate existence of Surviving Corporation as a California state-chartered financial institution, with all its purposes, objects, rights, powers, privileges and franchises, shall continue unaffected and unimpaired by the Merger.

1.3    **Further Action.**  The Disappearing Corporation shall execute and deliver any documents and instruments and take all action, as requested by the Surviving Corporation, necessary or desirable to evidence or carry out the Merger.

**Section 2.  Corporate Governance Matters.**

2.1    **Articles.**  The Articles of Surviving Corporation as in effect immediately prior to the Effective Time shall be and continue to be the Articles of the Surviving Corporation.

**Section 3.  Conversion of Shares.**

3.1    **Shares of Common Stock of Disappearing Corporation.**  At the Effective Time, by virtue of the Merger, and without any action on the part of shareholders of the common stock of Disappearing Corporation (**"Disappearing Corporation Common Stock"**), each share of Disappearing Corporation Common Stock issued and outstanding immediately prior to the Effective Time shall be cancelled without consideration.

3.2    **Shares of Surviving Corporation.**  The shares of Surviving Corporation common stock issued and outstanding immediately prior to the Effective Time shall remain outstanding, shall be unchanged after the Merger and shall immediately after the Effective Time constitute all of the issued and outstanding capital stock of the Surviving Corporation.

**Section 4.  Conditions.**

4.1    **Conditions to the Merger.**  The respective obligations of the parties to effect the Merger shall be subject to the satisfaction at or prior to the Effective Time of the following conditions:

(a) All of the conditions to the obligations of the parties to the HoldCo Merger Agreement to consummate the HoldCo Merger shall have been satisfied or waived in accordance with the terms thereof and the parties to the HoldCo Merger shall otherwise be standing ready, willing and able to consummate the HoldCo Merger simultaneously with the Merger.

(b) The parties shall have received all consents, approvals and permissions and the satisfaction of all of the requirements prescribed by law, including, but not limited to, the consents, approvals and permissions of all regulatory authorities which are necessary to carry out the Merger.

2

49

(c) There shall not be in effect any temporary restraining order, preliminary or permanent injunction or other order issued by any court of competent jurisdiction or other legal restraint or prohibition preventing the consummation of the Merger.

## Section 5. Termination and Amendment.

5.1    **Termination.**  Notwithstanding the approval of this Merger Agreement by the shareholders of Disappearing Corporation or Surviving Corporation, this Merger Agreement shall terminate forthwith prior to the Effective Time in the event the HoldCo Merger Agreement is terminated as therein provided. This Merger Agreement may also be terminated by mutual written consent of the parties hereto.

5.2    **Amendment.**  This Merger Agreement may be amended by Surviving Corporation and Disappearing Corporation at any time prior to the Effective Time without the approval of the shareholders of Disappearing Corporation or Surviving Corporation with respect to any of its terms, except any change in its principal terms or as may otherwise be required by law. This Merger Agreement may not be amended, except by an instrument in writing signed on behalf of each of the parties hereto.

5.3    **Governing Law.**  This Merger Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to any applicable conflicts of law, except to the extent federal law may be applicable.

5.4    **Successors and Assigns.**  This Merger Agreement is binding upon and is for the benefit of the parties hereto and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any rights or obligations hereunder may be assigned by any party hereto to any other person without the prior consent in writing of the other party hereto.

5.5    **Counterparts.**  This Merger Agreement may be signed in any number of counterparts, each of which shall be deemed an original, and all of which shall be deemed but one and the same instrument.

*[Continued and to be signed on following page]*

IN WITNESS WHEREOF, the parties have duly executed this Merger Agreement as of the date first written above.

PACIFIC WESTERN BANK

By: _____

Name:   Victor R. Santoro

Title:   Executive Vice President


By: _____

Name:   Lynn M. Hopkins

Title:   Secretary and Chief Financial Officer

[Signature Page to Bank Merger Agreement (Pacific Western Bank)]

51

IN WITNESS WHEREOF, the parties have duly executed this Merger Agreement as of the date first written above.

PACIFIC WESTERN BANK

By: _____
Name:   Victor R. Santoro
Title:   Executive Vice President


By: _____
Name:   Lynn M. Hopkins
Title:   Secretary and Chief Financial Officer

[Signature Page to Bank Merger Agreement (Pacific Western Bank)]

52

IN WITNESS WHEREOF, the parties have duly executed this Merger Agreement as of the date first written above.

FIRST CALIFORNIA BANK

By: _____
Name:  C. G. Kum
Title:    President


By: _____
Name:  Romolo Santarosa
Title:    Assistant Secretary

[Signature Page to Agreement of Merger]

53

CERTIFICATE OF APPROVAL
OF
AGREEMENT OF MERGER

(PACIFIC WESTERN BANK)

Pursuant to Section 1103 of the California Corporations Code, the undersigned, Victor R. Santoro and Lynn M. Hopkins, certify that:

1.  They are the (a) Executive Vice President and (b) Secretary and Chief Financial Officer, respectively, of Pacific Western Bank, a banking corporation organized under the laws of the State of California.

2.  The Corporation has only one class of shares outstanding and the total number of outstanding shares is 100.

3.  The principal terms of the Agreement of Merger in the form attached hereto were duly approved by the Board of Directors of the Corporation.

4.  The principal terms of the Agreement of Merger in the form attached hereto were approved by the sole shareholder of the Corporation.

5.  The Corporation has no shares of preferred stock outstanding.

*[Continued and to be signed on following page]*

54

The undersigned further declare under penalty of perjury under the laws of the State of California that the matters set forth in this Certificate are true and correct of our own knowledge.

Dated: _May 13_, 2013

_____
Name:   Victor R. Santoro
Title:    Executive Vice President


_____
Name:   Lynn M. Hopkins
Title:    Secretary and Chief Financial Officer

[Signature Page to Certificate of Approval (Pacific Western Bank)]

55

The undersigned further declare under penalty of perjury under the laws of the State of California that the matters set forth in this Certificate are true and correct of our own knowledge.

Dated: _May 13_ , 2013

Name:   Victor R. Santoro
Title:    Executive Vice President


Name:   Lynn M. Hopkins
Title:    Secretary and Chief Financial Officer

[Signature Page to Certificate of Approval (Pacific Western Bank)]   .

# CERTIFICATE OF APPROVAL
## OF
## AGREEMENT OF MERGER

### (FIRST CALIFORNIA BANK)

Pursuant to Section 1103 of the California Corporations Code, the undersigned, C. G. Kum and Romolo Santarosa, certify that:

1. They are the President and Assistant Secretary, respectively, of First California Bank, a banking corporation organized under the laws of the State of California.

2. The Corporation has only one class of shares outstanding and the total number of outstanding shares is 1,562,808.

3. The principal terms of the Agreement of Merger in the form attached hereto were duly approved by the Board of Directors of the Corporation.

4. The principal terms of the Agreement of Merger in the form attached hereto were approved by the sole shareholder of the Corporation.

5. The Corporation has no shares of preferred stock outstanding.

*[Continued and to be signed on following page]*

57

The undersigned further declares under penalty of perjury under the laws of the State of California that the matters set forth in this Certificate are true and correct of.our own knowledge.

Dated:  *May 13* , 2013

Name:  C. G. Kum
Title:    President

Name:  Romolo Santarosa
Title:    Assistant Secretary

[Signature Page to Certificate of Approval]

2013 MAY 31 PM 1:02

I hereby certify that the foregoing transcript of _____ page(s) is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.

MAY 31 2013

Date: _____

*Debra Bowen*

DEBRA BOWEN, Secretary of State

59

# EXHIBIT "H"

Leo

B6B (Official Form 6B) (12/07) - Cont.

In re **Wilfred Jesus Diaz,**
**Samantha Lynn Silva Diaz**

Case No. __2:15-bk-10687-RK__

Debtors

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 7. Furs and jewelry. | | Jewelry: wedding bands, necklace, and bracelet; Location: 4443 Levelside Avenue, Paramount CA 90723 | C | 2,000.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | | 2 Digital cameras, and Remington shotgun, stationary bike; Location: 4443 Levelside Avenue, Paramount CA 90723 | C | 580.00 |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | American General Life Insurance This is a term policy which has no cash value | C | 0.00 |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | Traditional IRA | H | 13,767.05 |
| | | LA County Department pension | H | 8,512.23 |
| | | LA County Department pension | W | 18,288.28 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | ITABO It's A Grind | H | 0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |

| | |
|---|---|
| Sub-Total > (Total of this page) | 43,147.56 |

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re   **Wilfred Jesus Diaz,**                                         Case No.   **2:15-bk-10687-RK**
        **Samantha Lynn Silva Diaz**
_____
                                    Debtors

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|:---:|---|:---:|---:|
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | **Inventory used for closed business [see attached list]** | H | **18,091.00** |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | | **Mobile telephones** | C | **120.00** |

|  |  |
|---|---:|
| Sub-Total > (Total of this page) | **18,211.00** |
| Total > | **74,765.36** |

(Report also on Summary of Schedules)

Sheet  **3**  of  **3**   continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                     Best Case Bankruptcy

It's A Grind
247 Pine Street
Long Beach, CA
Inventory and Auction Market value
as of
Saturday, April 26, 2014

| QTY | ITEM DESCRIPTION | | VALUE |
|---|---|---|---|
| | FRONT | | |
| 1 | True Reach In Beverage Refrigerator / Merchandiser Model GDM-12, single glass door, self serve | $ | 400 |
| 1 | Millcrook Refrigerated Deli / Beverage Combination Case curved front glass, rear doors, Model CTC 4859-FS-SS-V Combination self serve open front bottom and employee served (rear doors) upper, Discontinued older model, holes in compressor covering | $ | 750 |
| 1 | Beverage Air 48" Sandwich Table & Inserts, Refrigerated | $ | 600 |
| 1 | Beverage-Air under counter Refrigerator, Single door, Stainless Steel, 30" X 36" | $ | 250 |
| 1 | Beverage-Air under counter Refrigerator, Double Door, Stainless Steel, 60" X 36" | $ | 350 |
| 2 | Rival Microwave Ovens, 1 Cubic Ft. | $ | 100 |
| 1 | MERRYCHEF e2 Convection / Microwave Oven Ser. # 121121309D001 Per Aaron, reported to be only recently installed | $ | 3,000 |
| 2 | Blendtec 32389 Smoothie Blenders | $ | 500 |
| 1 | Anvil Pantry Griddle | $ | 125 |
| 10 | Plastic ware, assorted- 1qt. To 1 Gallon, some with lids | $ | 50 |
| 2 | Fetco Extractor Commercial 2 Pot Coffee Brewers | $ | 1,000 |
| 2 | Bunn G-1 Commercial Coffee Grinders | $ | 600 |
| 1 | Simonelli Aurelia 3 Group Cappuccino & Espresso Machine | $ | 3,000 |

6

63

| | | | |
|---|---|---|---|
| 2 | Simonelli Espresso Coffee Grinders (1 is marked "Broken") | $ | 600 |
| 1 | Yamato / Accu-Weigh 4lb. Scale, (certified - labeled 2/14) | $ | 30 |
| 3 | Trash Receptacles, commercial | $ | 30 |
| 1 | Aloha Point Of Sale Cash Register System consisting of 2 CPU / Monitors with Cash Drawers, 2 Ticket / Receipt - Printers, 1 System monitor (office) (System CPU not observed, probably in office) *(possibly leased) | $ | 1,000 |
| 15 | Customer Dining Chairs, Wood - curved back, hard bottoms | $ | 150 |
| 8 | Customer Chairs, Fabric Upholstered - Wing Back, dirty | $ | 120 |
| 6 | 18" X 18" Tables, wood, steel pedestals, well worn | $ | 45 |
| 1 | Round Table, 24", steel pedestal, well worn | $ | 10 |
| 1 | 30" X 60 Table, wood, wood legs | $ | 25 |
| 24 | Air Pots / Vacuum Pots Bulk Coffee Service, commercial | $ | 360 |
| 1 | Lot: Assorted interior décor, menu boards, plants, paintings glass etc. decorator items. | $ | 300 |
| | **OUTSIDE** | | |
| 4 | Tables, Wrought Iron, Round 30" | $ | 100 |
| 8 | Chairs, Wrought Iron | $ | 160 |
| 4 | Umbrellas, personalized "It's a Grind" | $ | 60 |
| | **BACK ROOM** | | |
| 1 | Stainless Steel Work Table, 36" X 40" | $ | 50 |
| 1 | Scotsman Ice Machine, approx. 525 pound capacity | $ | 750 |
| 5 | Lakem Stainless Wire Shelving 72" X 18" X 48" | $ | 500 |
| 4 | Lakem Stainless Wire Shelving 72" X 18" X 60". | $ | 300 |
| 1 | Lakem Stainless Wire Shelving 72" X 18" X 24" | $ | 50 |
| 1 | Commercial Dish Sink, Greenwould, 96", 3 Compartment | $ | 225 |

7

with sprayer & drain boards; Model TSA-3-D1

| | | | |
|---|---|---|---|
| 1 | Beverage Air 24" Freezer, single stainless door Model K24-1-ASX24 | $ | 600 |
| 1 | Beverage Air 48" Refrigerator, double stainless doors Model KR48-1-A9 | $ | 850 |
| 1 | Black & Decker 12" Countertop Pizza Convection Oven (not in service, on table, Aaron says works but was replaced by Merrychef) | $ | 85 |
| 3 | 3 gallon Permanex Catering Coffee Service Dispensers | $ | 75 |
| 1 | Lot assorted stainless and plastic kitchen wares, bowls, cups, scoops, spoons, etc. | $ | 100 |
| 1 | Kolman Conveyor Bagel Oven, Commercial (on table, not in service, Aaron says works but was replaced by Merrychef) | $ | 200 |
| 1 | Ladder, folding a frame | $ | 40 |
| 1 | Step Ladder, folding, 40" | $ | 10 |
| 1 | Locker Set, 6 doors, single stack | $ | 60 |
| 2 | Flat / folding product dollies | $ | 50 |

**OFFICE**

| | | | |
|---|---|---|---|
| 1 | Double Pedestal desk | $ | 15 |
| 1 | Clerical Chair (no arms) | $ | 10 |
| 1 | 2 Drawer File Cabinet, standard size, bent (pried open circa) | $ | |
| 1 | Security System Flat Panel monitor & four cameras | $ | 125 |
| 1 | Cannon MF5950 All-In-One scan-fax-copy | $ | 50 |
| 1 | Eclipse Safe, Digital, Single Door, 30" X 26" | $ | 250 |

| | | |
|---|---|---|
| TOTAL ALL ASSETS | $ | 18,091 |

8

65

B6D (Official Form 6D) (12/07)

In re   **Wilfred Jesus Diaz,**                                          Case No.   2:15-bk-10687-RK
        **Samantha Lynn Silva Diaz**

                                    Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No. xxxxxx0868<br><br>**Guild Mortgage Company**<br>Po Box 85304<br>San Diego, CA 92186 | | | | C | **Opened 10/01/12  Last Active  9/16/14**<br>**First Mortgage**<br>**Single Family Residence**<br>**Location: 4443 Levelside Avenue,**<br>**Lakewood CA 90723**<br>**Value is based on a formal valuation**<br>**from October 3, 2014.** | | | | | |
| | | | | | Value $                      426,100.00 | | | | 328,307.40 | 0.00 |
| Account No. xxxx-xx1-013<br><br>**Los Angeles County Tax Collector**<br>P.O. Box 54018<br>Los Angeles, CA 90054 | | | | - | **Property Taxes**<br>**Installments due: 4/10/2015**<br>**Rental Property/ Single Family**<br>**Residence**<br>**Location: 3364 Live Oak Street,**<br>**Huntington Park CA 90255**<br>**Value is an estimate which may be**<br>**refined through more formal valuation.** | | | | | |
| | | | | | Value $                      350,000.00 | | | | 1,999.75 | 1,999.75 |
| Account No. xxxx-xx1-034<br><br>**Los Angeles County Tax Collector**<br>P.O. Box 54018<br>Los Angeles, CA 90054 | | | | C | **Property Taxes**<br>**Installments due: 04/10/2015**<br>**Single Family Residence**<br>**Location: 4443 Levelside Avenue,**<br>**Lakewood CA 90723**<br>**Value is based on a formal valuation**<br>**from October 3, 2014.** | | | | | |
| | | | | | Value $                      426,100.00 | | | | 2,390.37 | 0.00 |
| Account No.<br><br>**SBA Loan Funds**<br>409 3rd St, SW<br>Washington, DC 20416 | | H | | | **Inventory used for closed business [see**<br>**attached list]** | | | X | | |
| | | | | | Value $                       18,091.00 | | | | Unknown | Unknown |
| _1_   continuation sheets attached | | | | | Subtotal<br>(Total of this page) | | | | 332,697.52 | 1,999.75 |

B6F (Official Form 6F) (12/07) - Cont.

In re    **Wilfred Jesus Diaz,**
**Samantha Lynn Silva Diaz**                                                     Case No.    **2:15-bk-10687-RK**
_____
Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxx1496<br><br>Brown Bag Sandwich Co., LLC<br>111 E. Garry Avenue<br>Santa Ana, CA 92707 | | C | Business debt | | | | 285.87 |
| Account No. xxxxxx6000<br><br>CapitalSource CSLM<br>75 Remittance Drive<br>Dept. 6673<br>Chicago, IL 60675-6673 | | H | Business debt | | | | 28,843.08 |
| Account No. xxxxxx1129<br><br>City of Long Beach<br>Alarm's Permit<br>333 W. Ocean Blvd.<br>Long Beach, CA 90802-4664 | | C | Business debt | | | | 27.00 |
| Account No. xxxxxx0000<br><br>City of Long Beach<br>Utility Customer Service<br>333 W. Ocean Blvd.<br>Long Beach, CA 90802-4664 | | C | Business debt | | | | 44.56 |
| Account No. x9746<br><br>First California Bank<br>1150 Paseo Camarillo<br>Camarillo, CA 93010 | | H | Opened 4/01/08 Last Active 5/06/13<br>Business Debt | | | | 285,000.00 |

Sheet no. __1__ of __3__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)            314,200.51

67.

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy